AT CHARLOTTESVILLE, VA
FILED
MAR 17 2009
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| HEATHER JENNINGS, *Administrator of the Estate of Misty Jennings, Deceased,*<br>　　　　　　　　　　　　　*Plaintiff,*<br><br>v.<br><br>H. LEE HART, ET AL.,<br>　　　　　　　　　　　　　*Defendants.* | CIVIL NO. 3:08CV00028<br><br>**MEMORANDUM OPINION**<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the Motions to Dismiss filed by Defendants H. Lee Hart, Tommy Yates, Dan Ghent, and Eddie Bell (docket no. 13), Lt. John Jenkins (docket no. 16), Kristine Whitehead (docket no. 45), and J.C. Johnson (docket no. 59). Each of the Defendants seeks to dismiss Heather Jennings' claim of negligence under the Virginia Wrongful Death Act on the grounds of sovereign immunity. Because none of the Defendants are entitled to sovereign immunity for their alleged acts of negligence, the Motions to Dismiss will be denied.

I. BACKGROUND[1]

Heather Jennings, Administrator of the Estate of Misty Jennings ("Plaintiff"), is suing Sheriff Lee Hart and several other current or former officers in the Culpeper County Sheriff's Department under 42 U.S.C. § 1983 and the Virginia Wrongful Death Act for their alleged wrongful denial of medical care to Misty Jennings ("Jennings") while she was an inmate in the Culpeper County Jail. Jennings was first admitted to the Jail in early October 2006 for violation of parole on a trespassing conviction. On November 9, 2006, she filled out a written request to see a doctor concerning painful headaches that she had been having for two weeks. Four days

---

[1] Except where otherwise noted, the facts recited here are derived from the Complaint. As required in the analysis of dismissal motions, these facts are assumed to be true for purposes of the motions. *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

later, Defendant Kristine Whitehead, a deputy and medic in the Sheriff's Department, made a note in Jennings' file indicating that she would follow up on the complaint and schedule an appointment. On November 17, 2006, Jennings was seen for the headache by JoAnne Peach, a nurse practitioner at Culpeper Family Practice. Peach noted that Jennings complained of a "continuous frontal headache for the last 3 weeks without any relief" and that Jennings rated the severity of her pain as a 4 on a scale of 1 to 10. In light of these and other symptoms, Peach ordered lab work, prescribed Naprosyn, and referred Jennings to a neurologist for further evaluation. Whitehead left a note in Jennings' file instructing the next shift to schedule an appointment for Jennings to see a neurologist. According to Plaintiff, an appointment was never made.[2]

From November 19, 2006 until November 26, 2006, the defendants gave Jennings her prescribed daily dosage of Naprosyn and/or Tylenol for the headache but allegedly provided no other medical care and made no arrangements for Jennings to see a health care provider, despite Peach's referral and Jennings' repeated requests for help and worsening symptoms. On November 19th, for example, Jennings complained to Defendant Ghent that her head was hurting badly and that the medicine was not helping, but Ghent allegedly did nothing to address the problems. On November 24th, Jennings allegedly told one of the guards at the jail that she needed to go to the hospital but was ignored. According to Plaintiff, Jennings' repeated requests to see a doctor or go to the hospital on November 25th and 26th were also ignored or rejected. On November 26th, Jennings felt so bad that one of her cellmates had to write another request for medical care on her behalf. The request indicated that Jennings was still suffering from

---

[2] Plaintiff has attached an undated written statement by Sgt. D.C. Peters, a jail official who looked through Jennings' file for information concerning Jennings' medications on November 27, 2006, the date that Jennings was taken to the hospital. Sgt. Peters stated: "I also did not see that a follow up appointment was scheduled. I checked the medical log book and the calendar and saw nothing noted stating such." Pl. Resp., Exh. 1B.

2

severe headaches, dizziness, pressure in her head, loss of appetite, and fluid drainage in her ears. Early on the morning of November 27th at about 3:30 A.M., a log entry written by one of the guards noted that Jennings was "very sick," vomiting, and suffering from cold sweats and a headache.[3] Although Jennings continued to vomit and suffer from dry heaves for another *nine* hours after that report was made, the Defendants allegedly did nothing to get Jennings to a doctor.[4] According to Plaintiff, it was not until some time after noon on the 27th that the Defendants arrived to examine and treat Jennings in her cell. Given Jennings' very serious condition, the Defendants called an ambulance at 12:51 P.M.[5]

After being transported by ambulance to Culpeper Regional Hospital, Jennings was taken by helicopter to the University of Virginia ("UVA") Medical Center for treatment. An MRI and CT scan conducted at UVA revealed a lesion in the right frontal area of Jennings' brain with extensive swelling and evidence of brain herniation. The data from the evaluations suggested that Jennings suffered from untreated brain abscesses and a stroke. Doctors removed a large portion of Jennings' skull to relieve the pressure on her brain that was caused by the abscesses and the swelling. After treatment, it became clear that Jennings would, at best, remain in a vegetative state for the remainder of her life. Consequently, her breathing and drainage tubes were removed and her antibiotics discontinued. She died on December 1, 2006.

---

[3] In addition, Sgt. Peters stated that when she arrived to work on November 27, 2006, she was advised by another deputy that Jennings was "had been throwing up all weekend." An inmate also advised Sgt. Peters that, despite Jennings' symptoms, a medic had not been in to see her all weekend. Sgt. Peters stated that by the time the ambulance arrived to transport Jennings to the hospital, she was unconscious, her coloring was "almost chalky gray," and her mouth and her right hand both appeared to be drawn in.

[4] According to the allegations in the Complaint, one of the guards made a note that Jennings would be taken to Culpeper Family Practice "today," meaning November 27, 2006, but no efforts were actually made by any of the Defendants to get Jennings to a doctor as of lunch time that day.

[5] A report attached to the Complaint states that when the Defendants arrived in Jennings' cell, they found vomit on her pillow and observed that she had very little reaction to painful stimulus, a constricted left pupil, and a dilated right pupil. *See* Pl. Compl., Exh. L.

3

## II. Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.* at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (alteration in original omitted) (citations omitted) (internal quotation marks omitted). Instead, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"; plaintiffs must "nudge[] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Id.* at 1974. A plaintiff "must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–45 (4th Cir. 2006).

4

## III. DISCUSSION

All of the Defendants argue that Plaintiff's simple negligence claim should be dismissed because they are entitled to sovereign immunity, which shields government employees from liability for acts of simple, but not gross, negligence. *See Colby v. Boyden*, 241 Va. 125, 128 (Va. 1991).[6] The doctrine of sovereign immunity applies to acts that are discretionary, but not ministerial, in nature. *Id.* at 128-29. To determine whether an employee is entitled to sovereign immunity, Virginia courts look to four different factors: "(1) the nature of the function the employee performs; (2) the extent of the government's interest and involvement in the function; (3) the degree of control and direction exercised over the employee by the government; and (4) whether the act in question involved the exercise of discretion and judgment." *Id.* at 128-29 (citations omitted). As the moving party, the Defendants bear the burden of proof on all issues of fact related to their plea of sovereign immunity. *See Whitley v. Commonwealth*, 260 Va. 482, 493 (Va. 2000).

The Defendants argue that Plaintiff's claim of simple negligence should be barred by sovereign immunity primarily because: (1) the state exercises a significant degree of control over and interest in the operation of local correctional facilities as well as the provision of medical care to inmates in such facilities, and (2) the provision of medical care to Jennings involved the exercise of judgment and discretion. The fact that the provision of medical care to Jennings *initially* involved the exercise of some judgment and discretion, however, does not necessarily mean that the Defendants should be entitled to sovereign immunity. Every act involves the exercise of at least some amount of discretion. *See James v. Jane*, 221 Va. 43, 53 (Va. 1980).

---

[6] Gross negligence is the "absence of slight diligence, or the want of even scant care." *Frazier v. City of Norfolk*, 234 Va. 388, 393, 362 S.E.2d 688, 691 (Va. 1987). It is that "degree of negligence as should shock fair-minded men although something less than willful recklessness." *Laster v. Tatum*, 206 Va. 804, 807, 146 S.E.2d 231, 233 (Va. 1966).

5

Whether a matter is truly committed to the discretion of a government employee is therefore a question of degree and requires an analysis of the circumstances of a particular situation. In this case, the Defendants allegedly ignored Jennings' worsening physical condition and repeated requests for help for a period of ten days after Peach, a trained nurse practitioner, referred Jennings to a neurologist. According to the Complaint, the Defendants essentially made no efforts whatsoever to even *contact* a neurologist or another doctor to schedule an appointment on Jennings' behalf. By the time the Defendants actually contacted outside medical professionals, Jennings was suffering from brain abscesses and a stroke. Thus, according to the allegations in the Complaint, well before Jennings was taken to the hospital, the circumstances were such that the Defendants lacked the discretion to keep her at the jail and deny her the opportunity to be seen by a neurologist or other medical professional. The fact that Peach did not provide a time frame for setting an appointment or recommend the name of a specific neurologist does not excuse the Defendants alleged failure to even *attempt* to schedule Jennings an appointment for a period of at least ten days, especially given her alleged symptoms.

Furthermore, while the state has a general interest in the treatment of inmates in its local correctional facilities, the degree of control it exercises over the provision of medical care to particular inmates on a day-to-day basis is relatively slight. In *James v. Jane*, in denying sovereign immunity to physicians at a state-owned hospital, the Virginia Supreme Court noted that although the state has a general interest in the proper medical care of patients treated at its hospitals, its interest and involvement in the treatment of a specific patient by a physician at a state-owned hospital is slight. 221 Va. 43, 54 (Va. 1980). The Court also characterized the degree of the state's control over a physician's treatment of a particular patient as "equally slight." *Id.* In this case, the degree of control the state exerts over the medical treatment of particular inmates is also fairly slight. The Defendants argue that the numerous statewide

6

standards set by the Virginia Board of Corrections concerning the operation of local correctional facilities illustrate the state's interest in and control over the treatment of inmates in such facilities. *See, e.g.*, Va. Code Ann. § 53.1-68, 6 Va. Admin. Code §§ 15-40-320 *et seq*. But these minimum standards are more a manifestation of the state's general interest in the safe and competent administration of its local correctional facilities than of any substantial degree of control over the medical treatment of individual inmates like Jennings on a day-to-day basis. Given the circumstances alleged by Plaintiff, the Defendants should not be entitled to sovereign immunity for any alleged acts of negligence. Holding otherwise would imply that sheriffs and their deputies have complete discretion to ignore the advice of medical professionals and disregard the ever-worsening medical symptoms of an inmate for an indefinite period of time. Accordingly, the Motions to Dismiss will be denied.

The Clerk of Court is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

It is so **ORDERED**.

Entered this 17th day of March, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE